The next case this morning is number 520-0135, Heartland Women's Healthcare, Ltd. v. Simonton-Smith. Arguing for the appellant, Heartland Women's Healthcare, Ltd. is Jared Montgomery. Arguing for the appellee, Dr. Leslie Simonton-Smith, is Rebecca Winnington. Each side will have up to 15 minutes for their argument. The appellant will also have five minutes for rebuttal. Please note only the clerk of the court is permitted to record these proceedings. Appellant, ready to proceed? Yes, your honor. Go ahead. Your honors, counsel, and may it please the court. My name is Jared Montgomery and I represent the plaintiff in this matter, Heartland Women's Healthcare. We're here today on the court's grant of defendant Leslie Simonton-Smith's motion for summary judgment which dismissed all claims asserted by the plaintiff. Now, by way of a little background, in the summer of 2009, Heartland Women's Healthcare approached the defendant and her partner, Dr. Walters, regarding the purchase of their practice. Over the next few months, negotiations took place between the parties. During the course of the negotiations, Dr. Simonton-Smith verbally stated to Michael Schifano, the president of Heartland, her intent to retire at the expiration of any agreement or any extension thereof. Was there an agreement at that time or not yet? What was the timing on that? Your honor, the statements made by Dr. Simonton-Smith were made sometime in the late summer or early fall of 2009 before the agreement was entered into in October of 2009. Okay. It was because of this promise from Dr. Simonton-Smith that Heartland agreed to pay her over three times the going rate for a similarly situated position in Jefferson County. Heartland further only required her to work 26 weeks out of the year. Heartland did so because they were compensating the plaintiff, the defendant, not only for her employment under the agreement but also for her practice. A three-year agreement was signed in late 2009 and Dr. Simonton-Smith worked for Heartland for the entire length of the agreement. Now your honors, Heartland considered Dr. Simonton-Smith a good employee and asked her to stay on beyond the length of the agreement, which she agreed to do. But in April of 2013, while still working for Heartland and without telling Heartland, she entered into negotiations with another provider in Jefferson County. She went to work for that provider and took her patient list with her, actively contacting her patients regarding her new employment. When she's elected to stay on, how was she paid? Was that based on any kind of hourly rate or what was that? Your honor, I believe she was still paid pursuant to the agreement that they agreed to an extension of the agreement. She got paid a part of that two million dollars? Correct, your honor. She was paid underneath the agreement which called for a percentage of the amount of the receipts that were brought into Heartland under the agreement. Dr. Simonton-Smith went to work for that provider and took her patient list with her and Heartland was prevented from acquiring Dr. Smith's the goodwill therefrom. Dr. Simonton-Smith's statements to Heartland that she intended to retire at the expiration of the agreement or any extension thereof was the basis for Heartland's claims of negligent and fraudulent misrepresentations set forth in its fourth amended complaint. The court granted defendants motion for summary judgment because it found Dr. Simonton-Smith did not make a false statement of material fact and even if she did, Heartland could not have justifiably relied on Dr. Simonton-Smith's statements regarding her intent to retire. Plaintiff would submit to this court that the circuit court of Jefferson County's holding was an error and the defendant's motion for summary judgment should have been denied. What the circuit court did was actually decide a motion to dismiss couched as a motion for summary judgment. The court held as a matter of law that the plaintiff could not allege misrepresentation of fraud when the alleged acts did not happen at the time of the transaction or after the transaction was in effect. The circuit court never reached whether there was an issue of material fact as to whether the defendant made a false statement of material fact. It was improper to grant defendants motion for summary judgment under said circumstances. Moreover, the court's statement that you cannot allege misrepresentation of fraud based on future conduct is a misstatement of Illinois law. The circuit court's decision ignores the exception established by the Illinois Supreme Court, most notably in Rota v. Berko. Where the alleged misrepresentation is the scheme or device used to accomplish the fraud, it is actionable. This court in Gold v. Dubish recognized the exception and upheld the based on future conduct. In Gold, Your Honor, the defendants promised the plaintiffs that a business deal had been accepted or confirmed and it would be completed in two weeks. The misrepresentation was made with the intent to induce the plaintiffs to quit their jobs and so defendants could impose different contractual terms upon them. In reliance on that statement, the plaintiffs did quit their jobs and suffered damages and lost income and having to find new jobs. This court rejected the argument that the allegations failed to state a cause of action for misrepresentation because the false statement constituted nothing more than misrepresentation about events to occur in the future. As this court stated, and I'm going to quote here, Your Honors, the allegations and plaintiff's complaint, along with the inferences which can reasonably be drawn from those allegations, clearly indicate that defendants promised plaintiffs that the transaction would be completed in order to induce plaintiffs to quit their jobs so that plaintiff's bargaining position be weakened and defendants could then impose different contractual terms upon them. The false promise or representation of future conduct, i.e. the promise the deal would be completed, was thus alleged to be the scheme employed to accomplish the fraud. This court reversed the circuit court's dismissal of the plaintiff's cause of action and that is analogous to what was pled in plaintiff's fourth amended complaint. Heartland's fourth amended complaint specifically alleges that Dr. Simon Smith's misrepresentations regarding her intent to retire and sell her practice to Heartland were made to induce Heartland to enter into the agreement. The misrepresentations were made to induce Heartland to pay Simon Smith in excess of two million dollars during the time of the agreement. Said compensation was substantially higher than that found in Jefferson County as a means to The complaint further alleges that Simon Smith's misrepresentations induced Heartland to hire certain Women's Health Associates employees, pay Simon Smith's office expenses, malpractice insurance, and health insurance. Dr. Simon Smith's misrepresentations regarding her intent to retire were alleged to be the scheme or device used to perpetrate the fraud and are actionable in Illinois. At the very least, your honors, there are issues of material fact that mandate reversal of the circuit court's order. Now, plaintiff has produced the deposition testimony of Dr. Schifano, the president of Heartland Women's Health Care. At two separate times during his deposition, Dr. Schifano testified that Dr. Simon Smith told him that she intended to retire at the expiration of the agreement. Dr. Schifano was specifically asked question, doctor, isn't it true you just assumed she would retire at the end of the October 19th, 2019 agreement? His answer, at what point in time? Question, when you entered into it? And his answer, absolutely. I assumed because she told me she would. I assumed she was telling me the truth. Not one page later, he gave the following answer. If you're asking me if we discuss whether she was going to retire, it's my belief that we discuss that the whole purpose of this entire agreement was that her and Dr. Walters were serious about retiring in three years, and that Dr. Walters may or may not continue, but she was pretty set on saying, I'm done. I don't, I'm tired, I'm done. So yes, I do have worse the fact that she was going to retire. The whole document is, you know, who stores records, who pays tail, it's all driven. The environment of the contract is for someone to retire. Dr. Schifano did not testify that Dr. Simonton Smith told him that she was considering retirement. He said that she was set on retiring. And the fact, your honor, Dr. Simonton Smith admitted during her deposition, she can't refute what Dr. Schifano's testimony, because she does not when you say that. As we sit here today, do you recall using the word possibly with Dr. Schifano, or did you just tell Dr. Schifano that it was your plan to retire in three years? Her answer, I don't recall the phrasing that I used. Thus, the unrefuted testimony of the parties is that Dr. Simonton Smith told Hartland she intended to retire at the expiration of the agreement, or any extension thereof. There is at the very least, your honors, an issue of material fact as to the same. Now, in plaintiff's brief and its reply, we cited several cases in support of our contention, and I will just direct the court's attention to one of those cases. In Stamatakis v. King, the plaintiff and defendant were engaged in extensive negotiations toward an agreement. A conditioned precedent to that agreement was that the defendant would purchase certain assets, a promise he never intended to keep. The first district analyzed the characteristics of an alleged scheme under ROTA, and held that considering the concept of a scheme, we believe that the protracted negotiations between the plaintiff and the defendant show that a scheme was alleged, and that it is a question of fact for the trier of fact to determine the ultimate issue. This holding is important because in Simonton Smith's response to Hartland's motion to reconsider, she states, we may very well have what could be considered protracted negotiations between the parties. Simonton Smith has thus essentially admitted a question of material fact exists sufficient to preclude summary judgment. A question of fact exists, and it's up to the trier of fact to now determine the ultimate issue in this case. The only part of the circuit court's decision were to even reach the factual allegations for a motion for summary judgment. Was it a statement that Hartland could not have reasonably relied on Simonton Smith's representations because Dr. Schifano only assumed she was going to retire? Your Honor, whether reliance is justified is a question of fact, and the law in Illinois is quite clear that what constitutes justifiable reliance will depend upon the surrounding circumstances and facts. The question of justifiable reliance can only be decided on summary judgment where the facts are undisputed and only one conclusion is apparent from the facts. Thus, justifiable reliance is almost always a question of fact that is properly decided by the trier of fact. This is not a situation where the facts are undisputed and only one conclusion can be drawn. The circuit court erred in construing the facts strictly against Hartland, the non-moving party. Hartland's president Michael Schifano testified Simonton Smith affirmatively told him during their negotiations her affirmative intent to retire. The fact that the agreement calls for the amount of compensation that Simonton Smith was only required to work 26 weeks are evidence of Hartland's justifiable reliance of Dr. Simonton justifiably relied on Dr. Simonton Smith's statements. Contrary to the circuit's court's order, Michael Schifano did not testify he assumed Simonton Smith was planning to retire, only that he assumed she was telling him the truth, not lying. Statements Dr. Simonton Smith admitted in her deposition she cannot refute. There was no assumption and the circuit court improperly construed Dr. Schifano's testimony against Hartland. The very fact that two different interpretations are plausible mandates the issue be construed in favor of Hartland and the issue submitted to the jury. Now finally your honors before my time is up I fully expect defendant to argue before this court as she did in her brief that Hartland is trying to impose a restrictive covenant upon her. It was argued to the circuit court and it was accepted and placed in the court's order. However, nowhere in Hartland's Fourth Amendment complaint does Hartland attempt to do so, arguing only that Simonton Smith should not be allowed to profit from her misrepresentations. Hartland's prayer for relief, whether it be in count one or count two, does not ask that Simonton Smith be prevented from practicing medicine in any capacity. Instead, Hartland's prayer for relief asked only for damages incurred by Hartland as a result of Simonton Smith's misrepresentations. By failing to retire she would, Hartland was prevented from completing its acquisition of Simonton Smith's practice. It was denied the benefits of the agreement, which includes the goodwill of her practice. Simonton Smith is free to practice medicine wherever she sees fit. However, she should not be allowed to profit from her misrepresentations. Hartland asked only that Simonton Smith be made to return the excess compensation paid to her and retain only the amount she would have been paid as an employee minus the acquisition of her practice. The amount of compensation that should be returned to Hartland is a question for the jury and is proper for their determination. Hartland thus respectfully requests this court to reverse the circuit court's grant of summary judgment and remand this cause back to the circuit court for further proceedings. Thank you, your honors. Thank you, counsel. Counsel for the appellee, ready to proceed? Go ahead, you may. Proceed. Trust, I am off mute now. Thank you, your honors. Okay. First, let me address the- You want to identify yourself for the record? This is Rebecca Whittington for Dr. Leslie Simonton Smith, the appellee before this court. Thank you, counsel. Thank you. May it please the court? I disagree with the technical issue on summary judgment as presented to the court in argument and in brief. While the typical summary judgment issue is whether there is a material fact in dispute, that is not the only textbook summary judgment issue that courts must wrestle with. And in this case, I really do not believe that there are facts in dispute or if you do accept the facts as appellant suggests, the issue before the court is a more refined issue. And that is whether the plaintiff, that'd be the appellant, had failed to establish the adequacy of the facts to state a cause of ruling was, and certainly our position is, is that regardless of any disagreement that we may have over details, that Heartland cannot come before this court, and even with the facts it has presented, cannot present a cause of action to the court for which relief should be granted. Now, I agree that that may sound like the same pleading standard that we have in 2615 or 2619, but it also by Illinois Supreme Court law is a matter proper for consideration on summary judgment. And that's what it is with that in mind that I'd like to hit the highlights of the facts. And I agree with counsel as to the facts, but I think it's worthy to set forth a couple here. Dr. Schifano admitted at page 1033 of the common law record that he did not disclose to nor discuss with Dr. Schifano that he was retiring. What that says is there was no negotiation in conversations. It was just that conversation. In fact, he said at common law record 1021, he does not recall the specifics of the details said. And that is why I believe that Judge Neubauer, as the trial court, made a finding that there were assumptions. Now, that is critically important, and with no disrespect to this court, I would point out that in the standard of review, a court of review does not substitute its judgment for that of the trial court on the credibility of witnesses, the weight to be given to the evidence, or the inferences to be drawn. Again, that is Illinois Supreme Court law cited on page two of my brief. So when we look at Judge Neubauer's order, he makes findings. And he says throughout the deposition testimony of Michael Schifano, in other words, the entire testimony, he speaks to having an assumption that Dr. Smith would retire when the employment agreement expired. Contrary to his own assumption, Schifano had Simonton Smith continue to work for Heartland, and I would point out Dr. Walters also, even after the term of the employment agreement. The court ends by saying from the testimony presented, and he makes these findings, there was no promise, no reliance, no misrepresentation, and no fraud. So we have facts that do not establish recovery, because they do not establish the threshold necessary to proceed. And that is the heart and purpose of summary judgment. And that is what the findings of the trial court supports. If anything, your honors, Dr. Schifano's characterization of the contract and the discussions as an environment that somebody is going to retire is, in fact, probably the most pointed description of what he saw. But it's also important to note that he was the only person authorized on behalf of Heartland to do the negotiations, that's established in the record, and that he had an attorney review the contract. That section is set out in my brief in a quote, so I won't go into it again. But your honors, that was not part of the agreement. There was nothing about the agreement that included any cessation of practice by either Walters or Smith, and that's important because they signed the same contract. Now, what we do have as facts that was glossed over by the appellate is the Dr. Schifano testified that the cost of purchasing the practice from Drs. Smith and Walters, two doctors remember, two, was prorated over the life of the contract so that it would have been paid, according to his December 31, 2012, before either physician carried over and continued to practice underneath the shingle, so to speak, of Heartland. That is important because if there was a real expectation that somebody, either one of these doctors, would retire after the end of three years, one would think it was because there was still consideration to be paid, and it wasn't. There is no consideration, none, set forth in this contract for a mandatory retirement. Now, we have counsel stating in argument and in his reply brief that, oh, well, Dr. Smith could go ahead and work, just, pay back what the overpayment was, but, Your Honors, that's the very purpose for why a contract should set forth these things in writing. We have what Judge Neubauer has already described as a very poorly drafted contract, and neither Attorney Montgomery or I were a part of that, but there is no mechanism for divesting payment. There is no liquidation of damages. There is no provision for that in the contract. That is ultra-contractual. That's simply a wish and a prayer to try to legitimate the draconian effect of what their real argument is, and that is that they had a right to control Dr. Simonton Smith. In other words, if she would continue to work for them as a holdover, it was okay, but the minute she went across the street, it's not okay. Tell me how that is part of the contract that you see in front of you. Tell me how that was a part of the contract that you see in front of you. Judge Neubauer's findings of fact, where he weighs the evidence, must be accorded the weight that the Supreme Court provides. He heard all of the evidence. He saw, at this point, the fifth iteration of plaintiff in filing an original complaint and then a fourth amended. He knew exactly what was going on. Your Honors, what we have here is actually a fully integrated contract reviewed by counsel and signed by parties. Now, if a term was left out, that is not now enforceable. It was not part of the contract between the parties. The mere fact that one party can come back after, and admittedly in the record, only after Dr. Simonton Smith has left and then, for the first time, say, we have a right to block you from working for anyone other than us in a contract that has no language to that effect, that's what you're being asked to approve. I set forth in my brief, and it's really more law school basics, so I won't reiterate all of it here, that this contract stood on its own, good, bad, or otherwise, whether it left things out, what fell into that dish sat there and was legally effective and recognizable as a contract, and what counsel is now trying to advocate is for this court to say, let us pour more into that dish that wasn't there when the parties, including another party, Dr. Walters, signed it. Dr. Simonton Smith fully performed all of the terms of the written contract. To say that there was something more that she needs to do, that she needs to perform by non-action is illusory. As I have stepped forth in my brief, and again, I won't reiterate all of it here, the statute of frauds would apply because the oral bar to practicing outside of come into effect for more than three years, because it was a three-year contract, and based on Simmons versus Campion, this court, nor any court, can justify reliance on conversational points that were admittedly, we now know, known to Dr. Schifano, the negotiator for Heartland, and not incorporated into the agreement, and not even characterized to Dr. Simonton Smith as expectations on Heartland's part. We know that from the record. That is the record that Judge Neubauer had to review completely. Therefore, what you're being asked to do is to establish a complete restraint on trade, and we now know just for the first time, permit then some dipping back and divesting of money that we know from Dr. Schifano was fully is directly on point, and it is cited in my brief. In MedEx, it was said that an oral promise to retire discussed at the start of a contract when not reduced to contractual writing cannot be enforced. It's simply a matter that is so unique and so separate and so important to protect one's work and ability to practice, in this case, medicine, that the courts will not sweep with a broad brush and include it into a contract where it does not exist. That's the MedEx staffing case. There it was said that it is not justified to rely on even a promise to retire, and there it was an overt promise to retire that was an oral promise because that became essentially, in other words, de facto, a non-compete clause. Here we have a non-compete in effect, just like in MedEx staffing. It is complete in nature, and it has no term. It is a non-specific establishment. Therefore, it is much like the Mullenow case that this fifth district decided, where it was determined that trying to bar people too broadly when part of a contract is per se invalid. I would also point to the Eichmann v. National Hospital case and believe that is another reason to believe it is per se invalid. Finally, Steinberg v. Medical School can be distinguished. That is one in the reply brief. There, a medical school made a written offer. It was accepted by the submission of an application to medical school, and the state Supreme Court said that the writings of the parties had established the terms and conditions, and we cannot vary it. That's all we are asking. If you look at the whole purpose of requiring written contracts, and then you look at what Judge Neubauer had before him, I respectfully suggest that summary judgment should be upheld. Thank you, counsel. Rebuttal? I think you're still on mute. You're still on mute. I apologize. You're on. You're good. Your honors, plaintiff or defendant is now trying to frame this issue as the adequacy of plaintiff's state of cause of action. I would direct this attention to especially just looking at a fraudulent misrepresentation claim. The elements are a false statement of material fact, knowledge or belief of the falsity of the party making it, intention to induce the other party to act, action by the other party in reliance on the truth of the statements, and damages to the other party resulting from such a reliance. Plaintiff's fourth amendment compliance sets forth all of those with evidence supporting all of the elements, your honor. The only difference in a negligent misrepresentation claim is the defendant or the defendant's state of mind. The false statement was alleged, knowledge or belief, intent to induce, action by, and reliance, and damages have all been set forth, your honor. Now, defendant tries to frame this as adequate state of cause of action, but then tries to argue Dr. Schifano's testimony. He's arguing that she's arguing the testimony based on her belief in it. The very fact that we are having disputes as to the testimony of Dr. Schifano emphasizes there are facts of dispute. Defendant further does not even acknowledge the fact that the testimony of Dr. Schifano has to be strictly construed against the defendant. I also heard the defendant state that no negotiations took place between the parties regarding Simon & Smith's intent to retire. No negotiations were needed, your honor. She affirmatively told him her intent to retire, Michael Schifano. Now, I would agree with defendant's argument that the on totally different causes of action, and as she stated, I didn't write the agreement. Defendant's counsel didn't write the agreement, and I'll admit it's poorly worded. But the fact that it is not included in the agreement does not preclude plaintiff from asserting cause of action for negligent and fraudulent misrepresentation based on Simon & Smith's statements that she intended to retire, statements that she profited from based on her Now, defendant brought up that the amount of compensation was prorated over the life of the contract and that Dr. Simon & Smith stayed over after the contract. If anything else, she benefited from staying over after the contract because she was still being compensated under the agreement. Now, defendant also does not acknowledge that during Dr. Simon & Smith's deposition, she testified that at the time she was undergoing negotiations to enter into going to work for a provider across the street, she knew she had sold her practice to Heartland Women's Health Care. That was the entire intent of the agreement, and yet she took her patient with the patient list with her despite such knowledge. Was the doctor's compensation different during the holdover period? My understanding was she was paid extra during the first three years to cover the not only her services but for the cost of the practice. During the holdover period, she was just paid for her work. Is that not right? Your Honor, I'm unclear just on basically what it is. Either way, if she was, the issue would be how much she was paid underneath the agreement, which would be a question of fact for the jury to decide. Based on that, if she was paid even a salary even more underneath the agreement, she benefited from it, Your Honor, being paid an extra salary before she went to work across the has set forth this notion that plaintiff is trying to enforce a non-compete clause against her. That is a complete red herring and a non-issue in this case. Defendant does not cite to any part of plaintiff's complaint where they're attempting to incite an oral agreement to retire. The cases that plaintiff's defendant cited in her rebuttal were specific cases where the defendant or the plaintiff was trying to enforce that oral agreement. That's not the case here, Your Honor. Hartland is willing to pay Ms. Simonton-Smith the amount that she would be compensated as an employee of Hartland's Women's Health Care minus the amount that she would have paid for a practice because they were denied the goodwill of accompanying that practice. Plaintiff doesn't do anything to distinguish the cases of Gold v. Dubish by this court or Stomaticus, Your Honor, which both held that plaintiff has a cause of action based on misrepresentations of future conduct. And based on that, Your Honor, we would ask this court to overturn the circuit court's grant of summary judgment on behalf of the defendant. Thank you, Your Honor. Thank you, counsel. Case will be taken under advisement. You'll be told about it in due time. Your excuse.